UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARLOS A. MORENO**,<br><br>Plaintiff,<br><br>v.<br><br>**RICHARD V. SPENCER, in his official capacity as SECRETARY OF THE NAVY**,<br><br>Defendant. | Case No. 1:17-cv-01099 (TNM) |

## MEMORANDUM OPINION

Plaintiff Carlos Moreno, a service member in the United States Marine Corps, filed for judicial review of the Government's[1] denial of his claim for benefits under the Servicemembers Group Life Insurance Traumatic Injury Protection Program ("TSGLI"). Compl. ¶¶ 1, 15, ECF No. 1. The Government seeks summary judgment, arguing that the adjudication of Mr. Moreno's claim was not arbitrary, capricious, or otherwise contrary to law under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. Mem. of P. & A. in Supp. of Def.'s Mot. for Summary J. ("Def.'s Mot. for Summary J.") 1, ECF No. 9-1. Upon consideration of the pleadings, relevant law, related legal memoranda in opposition and in support, and the entire record, the Court finds that the Government's determination that Mr. Moreno did not

---

[1] Mr. Moreno's Complaint names as the Defendant the United States of America, by and through the Department of Veterans Affairs, the Department of Justice, the U.S. Attorney's Office for the District of Columbia, the Department of Defense, and the Department of the Navy. Compl. 1. Pursuant to the Government's representation, Richard V. Spencer, as Secretary of the Navy, has been substituted as the appropriate Defendant in this case. Def.'s Reply in Supp. of Mot. for Summary J. 1 n.1, ECF No. 12.

present evidence sufficient to prevail on his claim is supported by the record. Accordingly, the Government's motion will be granted.

I.

On December 3, 2012, while on active duty, Mr. Moreno's right foot was run over by a M777 Howitzer tire, fracturing several of his metatarsal bones. A.R. 97, 107. The following day, he underwent surgery which placed metal pins on his foot. A.R. 97. Immediately after surgery, he wore a splint and was ordered to not bear any weight on his right foot. *Id*. On December 11, 2012, he transitioned to wearing a short leg cast and using crutches. *Id*. Approximately two months after surgery, the pins were removed and Mr. Moreno began using a cast boot with crutches. A.R. 354. His prognosis was "poor with regard to return[ing] to active duty" and a treatment note stated that "his care at this point is to provide him with a foot he can ambulate with minimal or no pain. I don't expect he will ever be able to run distances again or do heavy labor without some foot pain." *Id*. On March 14, 2013, a treatment note documented that Mr. Moreno was able to ambulate independently at 50% weight bearing with crutches. A.R. 356. Notes from physical therapy sessions on March 19, 2013; March 27, 2013; April 2, 2013; April 13, 2013; and April 22, 2013, indicate that Mr. Moreno ambulated into the clinic with crutches and/or a controlled ankle movement boot. A.R. 358-60.

On May 30, 2013, Mr. Moreno submitted an application to the Marine Corps for TSGLI benefits for the amount of $100,000, representing 120 consecutive days of loss of activities of daily living ("ADL"). A.R. 421. The TSGLI provides lump-sum payments for service members who sustain, among others, a traumatic injury that leads to an "inability to independently perform two or more" of activities of daily living, which include bathing, continence, dressing, eating, toileting, and transferring. 38 U.S.C. § 1980A; 38 C.F.R. § 9.20(e)(7). A service member's

losses must be sustained for at least 30 consecutive days, which is compensated with a $25,000 lump sum payout; each additional 30 consecutive day loss period warrants an incremental $25,000 payment with the total potential payout capped at $100,000 for 120 consecutive days of the inability to carry out ADLs. 38 C.F.R. § 9.20(e)(7). Claims are initially submitted to the service member's branch of service, and may be administratively appealed up to three times. Def.'s Mot. for Summary J. 7-8. Mr. Moreno claimed that he was unable to independently bathe and dress between December 3, 2012 and April 19, 2013. A.R. 327. Dr. Dennis Hopkins, who did not treat Mr. Moreno but reviewed his medical records, signed the portion of the benefits application requiring a medical professional statement. A.R. 329.

Mr. Moreno's claim was denied on August 6, 2013 as the "medical documentation d[id] not support [Mr. Moreno's] inability to perform ADLs for 30 days." A.R. 405-07. The letter explained that TSGLI benefits accrue when applicants are "unable to independently perform at least two activities of daily living (ADL)s for at least 30 consecutive days. The claimant is considered *unable* to perform an activity independently only if he or she *requires* at least one of the following, without which they would be *incapable* of performing the task: physical assistance (hands-on), stand-by assistance (within arm's reach), verbal assistance (must be instructed)." A.R. 405. This decision was appealed within the service branch, known as a claim "reconsideration," on October 24, 2013 and was denied on December 12, 2013. A.R. 19-20, 23-38. The denial letter stated that "[t]he available medical documentation did not support that [Mr. Moreno] had at least two Activities of Daily Living (ADLs) for 120 days." A.R. 19.

Mr. Moreno appealed the decision to the second level of administrative review, the TSGLI Appeals Board of the Navy Council of Review ("Appeals Board"). A.R. 9-11. In support of his inability to perform at least two ADLs, he presented a letter from his wife,

3

Kathleen Moreno. A.R. 14. In her letter, Mrs. Moreno described that in the weeks after his surgery, she observed through videoconference Mr. Moreno "struggle to get up and get to the restroom as well as try to figure out how to get food for two weeks" and that "[s]howering was not even possible as he was unable to stand." *Id*. She also described that once he returned home on February 26, 2013, he "required help undressing to use the restroom as well as redressing when he finished. He required assistance positioning his leg/foot as he sat on the toilet. . . . He also required help getting in and out of the shower as well as washing his lower extremities. I also assisted my husband in getting dressed as he was unable to get pants on by himself." *Id*. She also stated that he was "unable to prepare his own food" and "unable to move around freely as he was still on crutches." *Id*. On December 22, 2015, citing a preponderance of the evidence standard, the Appeals Board denied the appeal because the "evidence does not support that Sergeant Moreno required assistance for two ADLs for a period of 120 days or more." A.R. 2-6.

Mr. Moreno appears to not have appealed to the third level of administrative review and instead filed suit in this Court. Administrative exhaustion is not required for judicial review under the APA for a service member's TSGLI claim. *See* 38 U.S.C. § 1975 (granting any district court of the United States with original jurisdiction over TSGLI claims); 38 C.F.R. § 9.20 (i)(3) ("Nothing in this section precludes a member from pursuing legal remedies under 38 U.S.C. 1975 and 38 C.F.R. 9.13"); T*raumatic Injury Protection Under Servicemembers' Group Life Insurance (TSGLI): A Procedural Guide* (version 2.41; Jan. 5, 2018) ("In addition to utilizing the administrative appeals process, members have the right to file suit in federal court to contest an

adverse TSGLI decision."); *see also* Def.'s Reply in Supp. of Mot. for Summary J. ("Def.'s Reply") 2, ECF No. 12.[2]

## II.

In cases reviewing agency action under the APA, motions for summary judgment are not analyzed under Federal Rule of Civil Procedure 56 "because of the court's limited role in reviewing the administrative record." *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). In APA cases, the Court must decide, "as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* at 240. The APA requires that the Court "set aside agency action, findings, and conclusions" that are, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Judicial review under the arbitrary or capricious standard requires the Court to determine "whether there is 'such relevant evidence as a reasonable mind might accept as adequate to support' the agency's finding." *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. PBGC*, 707 F.3d 319, 325 (D.C. Cir. 2013) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)); *see also Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984) ("[I]n their application to the requirement of factual support the substantial evidence test [of 5 U.S.C. § 706(2)(E)] and the arbitrary and capricious test [of 5 U.S.C. § 706(2)(A)] are

---

[2] As the Government notes, throughout his opposition, Mr. Moreno refers to the Board for Correction of Naval Records ("BCNR"), the third level of administrative review for service members' TSGLI claims. *Id.* There is no evidence in the record to indicate that Mr. Moreno's claim was appealed to the BCNR. *Id.* Thus, any references in this opinion to the agency's or the Government's decision is the decision of the TSGLI Appeals Board.

one and the same.").³  Stated another way, courts reviewing for substantial evidence "do not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the [agency's] ultimate decision." *Florida Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010).

At various points in their briefs, both Mr. Moreno and the Government advocate that other standards should apply.  The Government notes that this Circuit uses "an unusually deferential application of the arbitrary or capricious standard of the APA" when reviewing decisions by military review boards for the correction of military records.  Def.'s Mot. for Summary J. 10.  But the cases the Government cites in support—and the cases cited therein—do not involve decisions about TSGLI benefits.  *See, e.g.*, *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006) (review of non-judicial punishment); *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (review of decision whether to alter a military record); *Havens v. Maybus*, 146 F. Supp. 3d 202, 214-15 (D.D.C. 2015) (same).  Neither party here offers any authority that decisions about TSGLI benefits should receive this "unusually deferential" treatment, and on that basis, this Court will not employ it.  *See Hensley v. United States*, 2018 WL 1036361, at *6 (D.D.C. Feb. 22, 2018) (applying the "traditional" arbitrary or capricious standard of review to a claim for TSGLI benefits).

Mr. Moreno claims that the agency failed to use a preponderance of the evidence standard to evaluate his claim, *id.* at 11-12, but also goes further to argue that the "true standard

---

³ As then-Judge Scalia described it, the "'scope of review' provisions of the APA are cumulative. . . . the 'arbitrary or capricious' provision—is a catchall, picking up administrative misconduct not covered by the other more specific paragraphs.  Thus, in those situations where paragraph (E) has no application . . . paragraph (A) takes up the slack." *Id.*  Because this matter is not "a case subject to sections 556 and 557 [formal rulemaking procedures]" and Mr. Moreno does not argue that it is "otherwise reviewed on the record of an agency hearing provided by statute," I will use the phraseology "arbitrary or capricious."  *See* 5 U.S.C. § 706(2)(E).

6

applicable" is actually a lesser "substantial evidence" standard. *Id*. at 12. According to Mr. Moreno and the primary case on which he relies, *Yearwood v. United States*, 125 F. Supp. 3d 1204, 1216 (N.D. Ala. 2015), substantial evidence is "something more than a mere scintilla but less than a preponderance. Once the claimant meets this substantial-evidence burden, he is entitled to the benefit of the doubt as to every matter on which the evidence is in 'approximate balance'." Pl.'s Opp'n at 12-13 (citing 38 U.S.C. § 5107(b), which requires the Secretary to "give the benefit of the doubt to the claimant" when evidence is in equipoise). But as Mr. Moreno's counsel well knows, when issues are not first raised to the agency during the administrative process, they need not be considered during judicial review of agency action. See*, e.g.*, *Coker v. United States*, 2016 WL 7242727 at *5 (W.D. Ky. Dec. 14, 2016) (employing the administrative waiver doctrine against considering the "benefit of the doubt" argument advanced by the same counsel representing Mr. Moreno); *see also Advocates for Highway and Auto Safety v. Fed. Motor Carrier Admin.*, 429 F.3d 1136, 1149 (D.C. Cir. 2005) (discussing the administrative waiver doctrine). The Government disputes that the "benefit of the doubt" rule applies to TSGLI benefits cases. Def.'s Reply 5. Because it has not been presented to or deliberated by the agency, this Court will not consider Mr. Moreno's argument that the agency erred in applying the wrong standard to evaluate his claim.

### III.

Having established that the proper standard for judicial review in this TSGLI benefits case is the traditional arbitrary or capricious test, the Court turns to Mr. Moreno's substantive argument that the agency's decision was "taken in direct disregard" of his wife's letter, the medical certification signed by Dr. Hopkins, and his medical records. Pl.'s Opp'n 16-21. Mr. Moreno asserts that his wife's statement provides percipient evidence that Mr. Moreno

suffered loss of ADLs. *Id.* at 19. He further argues that the certification by Dr. Dennis Hopkins, a physician who reviewed his medical records, "speaks for itself" that Mr. Moreno suffered more than 120 days of loss of ADLs because Dr. Hopkins attested to it. *Id.* at 16. As for his medical records, Mr. Moreno argues that they are "unlikely to contain, on any consistent basis, entries that document lack of ability to perform ADLs." *Id.* at 17. Because of this, Mr. Moreno asks the Court to infer that he was "incapable of safely performing his activities of daily living of bathing and dressing without physical or standby assistance" from records showing that he was nonweightbearing for a period of time and thereafter was a fall risk. *See id.* at 18.

To be sure, the documentation in this case that directly addresses Mr. Moreno's inability to perform ADLs is scant. But Mr. Moreno's arguments miscomprehend the focus of this Court's review, which is to "not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the [agency's] ultimate decision." *Florida Gas Transmission Co.*, 604 F.3d at 645. Even assuming, *arguendo*, that the evidence emphasized by Mr. Moreno is consistent with the loss of ADLs, it would be improper for this Court to "substitute its judgment for that of the agency." *See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As previously described, judicial review under the arbitrary or capricious test looks to whether there is "relevant evidence [that] a reasonable mind might accept as adequate to support" an agency decision. *United Steel*, 707 F.3d at 325.

In Mr. Moreno's case, the Appeals Board specifically noted that its review included "the case file and all medical documentation, to include the recently submitted new and material evidence"—namely, Mrs. Moreno's statement. *See* A.R. 2. Documentation from the Appeals Board's review shows that Mrs. Moreno's statement was taken into account but found not to

8

substantiate Mr. Moreno's inability to perform two ADLs. A.R. 5. Specifically, one review comment found that "his wife's statement indicates she communicated with him via skype, that he had no assistance, and was required to return to work two weeks after sustaining his surgery." *Id*. Another reviewer stated, "wife's statement indicates servicemember was living in Barracks alone without aid from command and was required to return to work in 2 weeks." A.R. 6. These statements may reasonably be taken to mean that Mr. Moreno did not have assistance in the weeks following his injury, and that he was not unable to "independently perform" certain ADLs. *See* 38 U.S.C. § 1980A.

The Appeals Board was also free to consider and weigh Dr. Hopkins' assertion on Mr. Moreno's application for 120 days of bathing and dressing ADLs vis-à-vis treatment records maintained by Mr. Moreno's treating physicians and notes from his physical therapy sessions. As summarized by a regimental surgeon who reviewed Mr. Moreno's medical records during the reconsideration review, his medical records showed that "he is ambulatory[with] crutches" and that "he ambulated independently. . . . There are no OT notes addressing claim for bathe and dress ADLs []." A.R. 21-22; *see also* A.R. 356-60 (documenting instances where Mr. Moreno was able to ambulate independently with crutches and/or a controlled ankle movement boot). It was within the Appeal Board's purview to evaluate this underlying evidence, which was contemporaneously documented by Mr. Moreno's medical treatment team, against the statement of a non-treating physician. *See Weller v. United States*, 2014 WL 5320133, at *4 (M.D. La. Oct. 17, 2014) (finding it was not arbitrary or capricious for the Government to conclude that other medical evidence in the record did not support, *inter alia*, the medical certification submitted with the service member's application for benefits). Mr. Moreno asks the Court to discount the lack of contemporaneous documentation because other evidence—that he was

9

ordered to be nonweightbearing for some time after surgery, and was thereafter considered a fall risk—implies that he was unable to independently bathe and dress. Def.'s Opp'n 17-18. But it is not for this Court to make inferences from the record evidence (or lack thereof), or to assess the strength and veracity of competing factual assertions or medical conclusions. The Appeals Board's unanimous conclusion that the evidence did not reflect even 30 days' ADL loss is reasonably supported by the record indicating that Mr. Moreno was able to perform certain activities independently and that he did not have assistance in his daily activities in the weeks following surgery. On that basis, the Court finds that the Government's decision was not arbitrary or capricious.

## IV.

For the foregoing reasons, the Defendant's Motion for Summary Judgment will be granted. A separate order will issue.

Dated: April 26, 2018

TREVOR N. MCFADDEN
United States District Judge